IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM MICHAEL WEBB, | : | No. 4:14-cv-01499 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| TAHSIN INDUSTRIAL CORP., | : | |
| U.S.A., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**February 5, 2016**

For some reason, Plaintiff has failed to secure an expert witness in this products liability action. Because Plaintiff is unprepared to tender a viable expert at this late stage in the litigation, he will necessarily be unable to present any expert testimony at trial. As such, all of Plaintiff's claims must fail as a matter of law, and Defendant is entitled to an entry of summary judgment in its favor.

## I.    BACKGROUND

Plaintiff William Michael Webb alleges that his injuries, which he incurred while using a ladder treestand manufactured by Defendant Tahsin Industrial Corp., U.S.A., resulted from a defect in that product.[1] Plaintiff brought three claims

---

[1]  ECF No. 1 Ex. 1 at 3–4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Pennsylvania, Defendant is a New Jersey corporation with its principal place of business also in New Jersey, and the amount in controversy exceeds $75,000, exclusive of interest and costs. ECF No. 1 at 2–3.

against Defendant: one for defective design, a second for failure to warn, and a third for breach of warranty.[2] Currently before the Court are two motions by Defendant. The first is its Motion to Exclude Plaintiff's expert witness, Al Vangura, Jr.[3] The second is its Motion for Summary Judgment.[4]  Unfortunately for Plaintiff, because he has failed to procure an expert witness, his claims must stop short of any fruition.

The initial problem with Mr. Vangura is that his involvement in this case has been minimal, at best. His sole expert submission consisted of a single page, a skeletal January 7, 2013 letter, drafted approximately eighteen months before this matter had even been filed, which merely enumerated certain "suggested theories."[5] This letter, referred to by Plaintiff as Vangura's "expert report," did not bear any resemblance to an acceptable expert report for federal litigation, and it is unclear from the letter itself whether Mr. Vangura intended that communication to constitute a report at all.[6]

In its Motion to Preclude, Defendant made three primary contentions: (i) that Mr. Vangura's letter did not constitute an expert report; (ii) that the letter lacked the necessary indicia of reliability required for admissibility; and (iii) that admission of Mr. Vangura's testimony should be barred as a result of untimely

---

[2] ECF No. 1 Ex. 1 at 8–12.
[3] ECF No. 28.
[4] ECF No. 30.
[5] ECF No. 29 Ex. 3.
[6] See ECF No. 32 at 5.

disclosure since Plaintiff consequently failed to file an expert report by May 28, 2015, the deadline imposed in the Court's initial case management scheduling Order.[7] Based upon the Court's review of the parties' briefs and the pertinent documents, I believed all three of Defendant's arguments had merit and subsequently scheduled a <u>Daubert</u> hearing conducted on December 18, 2015 to address whether Mr. Vangura's prospective testimony should survive.[8]

What transpired on December 18, 2015 was the Court's shortest <u>Daubert</u> hearing to date. That's because, in what this Court would consider a matter of bad form, Plaintiff's counsel, Robert Thompson Rosamilia, Esquire, informed the Court and defense counsel at the outset of the hearing that Mr. Vangura was unwilling to testify for Plaintiff in this matter. Mr. Rosamilia was made aware of Mr. Vangura's decision to withdraw at least two days before the hearing.[9] Defense counsel, Milton S. Karfis, Esquire, had travelled approximately four hundred and fifty miles to the hearing in Williamsport, Pennsylvania from Detroit, Michigan. Mr. Rosamalia had traveled approximately thirty miles from Lock Haven, Pennsylvania.

Accordingly, in his opening statement to the Court, Mr. Rosamilia conceded that Plaintiff lacked an expert and would therefore withdraw his defective design

---

[7] ECF No. 28.
[8] ECF No. 36.
[9] ECF No. 41 at 4.

and breach of warranty claims. However, Plaintiff suggested that his failure to warn claim could persist, even in the absence of a viable expert. Defendant contested this point, and I ordered supplemental briefing on the issue.

In his supplemental brief, Plaintiff further conceded that his failure to warn claim also could not survive without expert testimony.[10] Plaintiff went on to request an extension of time to retain a replacement.[11] Plaintiff has filed no motion in support of his request. Instead, he allotted three paragraphs in his supplemental Daubert brief to the issue, explaining that Plaintiff was "entirely caught off guard" and "surprise[d]" by his expert's decision to refuse to testify some two days prior to the Daubert hearing.[12] Curiously, prior to the instant request, Plaintiff has asked for at least one similar extension, which can be found embedded in his July 16, 2015 Brief in Opposition to Defendant's Motion to Preclude.[13]

Defendant's supplemental brief takes issue with Plaintiff's eleventh-hour petition for additional time. According to Defendant, "[a]llowing a new expert at

---

[10] ECF No. 41 at 5. ("Plaintiff would now concede that the Failure to Warn claims of the Plaintiff must be supported by expert testimony to succeed at the ultimate trial in this matter."). Defendant correspondingly cited to LaBarre v. Bristol-Myers Squibb Co., 544 F. App'x 120, 125 (3d Cir. 2013) (Shwartz, J.) ("Accordingly, summary judgment is appropriate on a failure to warn claim if a plaintiff has not proffered expert testimony on the adequacy of the warnings."). Defendant also cites numerous additional cases, including Lynn ex rel. Lynn v. Yamaha Golf-Car Co., 894 F. Supp. 2d 606, 639-40 (W.D. Pa. 2012) ("In a strict liability case alleging such a defect, the plaintiff must show, through experts or otherwise why the warnings are allegedly inadequate or how the existing warnings could be improved.") (internal quotations omitted). The Court agrees with the mutual conclusion of both parties that expert testimony is required to prove liability in a failure to warn claim as a matter of law.
[11] ECF No. 41 at 5.
[12] ECF No. 41 at 5–6.
[13] ECF No. 32 at 9.

this very late stage would be basically starting this case over from the beginning."[14]

In addition, Defendant contends that it will be "prejudiced" and "subject to

repeated costs" because "[t]he deadlines passed and Defendant, complying with

them, has relied on them."[15] This Court agrees with Defendant, and as a result,

Defendant's Motion for Summary Judgment is now granted.[16]

## II.    LAW

Summary judgment is appropriate if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."[17] "Facts that could alter the outcome are 'material facts,' and

disputes are 'genuine' if evidence exists from which a rational person could

conclude that the position of the person with the burden of proof on the disputed

issue is correct." [18] "A defendant meets this standard when there is an absence of

evidence that rationally supports the plaintiff's case."[19] "A plaintiff, on the other

hand, must point to admissible evidence that would be sufficient to show all

elements of a prima facie case under applicable substantive law."[20] "Speculation

---

[14]  ECF No. 42 at 2.
[15]  ECF No. 42 at 2.
[16]  Given Mr. Vangura's withdrawal from the matter, Defendant's Motion to Preclude Mr.
     Vangura's Testimony is denied as moot.
[17]  Fed. R. Civ. P. 56(a).
[18]  Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (citing Anderson
     v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322
     (1986)) (internal citations omitted).
[19]  Clark, 9 F.3d at 326.
[20]  Id.

does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."[21] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[22]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[23] Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[24] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[25] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

---

[21] Lexington Ins. Co. v. W. Pennsylvania Hosp., 423 F.3d 318, 333 (3d Cir. 2005) (Becker, C.J.).
[22] Celotex Corp., 477 U.S. at 323–24.
[23] Liberty Lobby, Inc., 477 U.S. at 252.
[24] Id.
[25] Id.

imposed.'"[26]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[27] "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[28]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[29] "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in  the evaluation of the court) than a preponderance. Whether the quantum of circumstantial evidence in any particular case is enough to meet the Liberty Lobby standard sometimes requires us to make difficult, fact-specific,

---

[26] Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson, 81 U.S. 442, 447 (1871)).
[27] Celotex Corp., 477 U.S. at 323 (internal quotations omitted).
[28] Id.
[29] Liberty Lobby, Inc., 477 U.S. at 250.

perhaps somewhat arbitrary judgments."[30] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[31]

Consequently, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[32] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[33] On motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."[34]

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

---

[30] <u>Williams v. Borough of W. Chester, Pa.</u>, 891 F.2d 458, 460–61 (3d Cir. 1989) (Becker, C.J.).
[31] Fed. R. Civ. P. 56(c)(1).
[32] <u>Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir.2003) (Weis, J.).
[33] Fed. R. Civ. P. 56(e)(2).
[34] Fed. R. Civ. P. 56(c)(3).

there is a genuine issue for trial."[35] "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party."[36] "If the evidence is merely colorable . . . or is not significantly

probative, summary judgment may be granted."[37]

## III.   ANALYSIS

Given the withdrawal of Plaintiff's expert in combination with Plaintiff's

concession that each of his claims are rightly dismissed without the benefit of

expert testimony, the sole remaining issue is whether Plaintiff should be afforded

additional time to find a replacement expert now some eight months since his

initial report was due. In its discretion, the Court believes such a request is not

warranted.

In <u>Meyers v. Pennypack Woods Home Ownership Association</u>, Judge Max

Rosenn, writing for the United States Court of Appeals for the Third Circuit, set

forth several factors for district courts to weigh when evaluating motions seeking

to exclude evidence. In addition to "the importance of the excluded testimony,"

those factors include: "(1) the prejudice or surprise in fact of the party against

whom the excluded witnesses would have testified, (2) the ability of that party to

cure the prejudice, (3) the extent to which waiver of the rule against calling

---

[35] <u>Liberty Lobby, Inc.</u>, 477 U.S. at 249.
[36] <u>Id.</u>
[37] <u>Id.</u> at 249–50 (internal citations omitted).

unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order."[38] The <u>Meyers</u> factors reinforce the concept that exclusion is sometimes necessary to avoid a so-called "trial by ambush."

In <u>Konstantopoulos v. Westvaco Corp.</u>, then Third Circuit Judge Samuel A. Alito, Jr., applied the <u>Meyers</u> factors to exclude an expert "based on trial counsel's failure to comply with relevant pretrial discovery orders."[39] As a threshold matter, Judge Alito described the standard of review to be applied to a district court's exclusion of evidence that fails to adhere to a pretrial order as follows:

> The trial court's exclusion of testimony because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion.[40]

Having so framed the Third Circuit's inquiry, Judge Alito turned to the <u>Meyers</u> factors as they applied to late disclosure of an expert. He first noted that the absence of a formal written report in combination with the expert's late disclosure was sufficient to prejudice the opposing party. The court was further "unmoved" by the argument that the opposing party "could have 'cured' the prejudice resulting from trial counsel's late designation of . . . an expert witness."[41] The substituting party "would have gained a valuable tactical advantage by

---

[38] <u>Id.</u> at 904–05.
[39] 112 F.3d 710, 719 (3d Cir. 1997).
[40] <u>Id.</u> at 719.
[41] Id. at 721.

10

requiring Westvaco to focus its litigation resources on these efforts" as the trial date quickly approached.[42] Moreover, it was difficult for the court to assume that the introduction of an untimely expert witness "would not have disrupted the commencement or the progress of the trial in this case."[43] Accordingly, the district court's refusal to permit the untimely expert to testify was affirmed.[44]

In applying the factors set forth in <u>Meyers</u>, several courts in the Third Circuit's venire have held that expert identification, untimely expert replacement, and other related expert disclosure deficiencies typically constitute "flagrant disregard" of a district court's scheduling order, thereby warranting exclusion.[45] For example, the matter <u>Pfizer, Inc. v. IVAX Pharmaceuticals, Inc.</u> involved an attempt by one party to name a substitute expert one year after the scheduling order deadline for expert identification had passed.[46] The opposing party objected because, among other reasons, the replacement expert's late report would introduce arguments that had not been fully advanced by the prior expert.[47] This late timing, the court observed, was "fatal" to the moving party's request for a replacement

---

[42] <u>Id.</u>
[43] <u>Id.</u>
[44] <u>See</u> <u>Pfizer, Inc. v. IVAX Pharm., Inc.,</u> No. CIV A 07-174(DMC), 2009 WL 1885100, at *3 (D.N.J. June 29, 2009); <u>Konstantopoulos v. Westvaco Corp.,</u> 112 F.3d 710, 719 (3d Cir.1997) (Alito, J.); <u>In re TMI Litig. Cases Consol. II,</u> 911 F. Supp. 775 (M.D. Pa. 1996) (Rambo, C.J.), <u>aff'd sub nom. In re TMI Litig.,</u> 193 F.3d 613 (3d Cir. 1999)<u>Bowers v. Nat'l Collegiate Athletic Ass'n,</u> 564 F.Supp.2d 322 (D.N.J.2008); <u>Exxon Corp. v. Halcon Shipping Co.,</u> Ltd. 156 F.R.D. 589, 591 (D.N.J.1994).
[46] No. CIV A 07-174(DMC), 2009 WL 1885100, at *3 (D.N.J. June 29, 2009).
[47] <u>Id.</u> at *2.

expert.[48] In essence, such an "untimely identification" constituted "flagrant disregard" of the court's scheduling order and warranted denial of the replacement expert.[49]

Turning to the <u>Meyers</u> factors, the <u>Pfizer</u> court noted that a late substitution would enable the new expert "to shape [the prior expert's] opinions and potentially offer surprise rebuttal testimony" that the opposing party "would not be in a position to refute."[50] Further, the <u>Pfizer</u> court noted that "[t]he only way to alleviate this prejudice would require the wholesale reopening of expert discovery in a complex case on the eve of trial"—an unacceptable outcome in the court's view.[51] The opposing party "would likely be prejudiced" because substitution "would likely interfere with [ ] trial preparation and presentation of its case." Such prejudice required denial of the request to retain a substitute expert.[52]

Lastly, in <u>In re TMI Litig. Cases Consol. II</u>, then Chief Judge Sylvia H. Rambo of this Court excluded reports that a plaintiff sought to enter some eight months after the expert report deadline had passed.[53] Chief Judge Rambo wrote:

> The testimony of experts named in ¶ 1 of the 11/9/95 order were excluded based upon the untimely filing of their expert reports. Through an order dated November 13, 1994, this court set the

---

[48] <u>Id.</u> at *3.
[49] <u>Id.</u>
[50] <u>Id.</u> at *4.
[51] <u>Id.</u>
[52] <u>Id.</u> at *5.
[53] 911 F. Supp. 775 (M.D. Pa. 1996), <u>aff'd sub nom.</u> <u>In re TMI Litig.</u>, 193 F.3d 613 (3d Cir. 1999).

deadline for the filing of Plaintiffs' expert reports as March 1, 1995.

. . .

This court directed the disclosure of Plaintiffs' expert reports on dose to occur on March 1, 1995. On the eve of the in limine hearing, some eight months later and without an explanation, Plaintiffs attempted to introduce new reports for a total of ten experts. Moreover, the bulk of these reports were to be delivered by previously unidentified experts. In <u>Daubert</u>, the Supreme Court drew an important line in the sand in reference to the evolving nature of scientific testimony: Scientific conclusions are subject to perpetual revision. Law, on the other hand, must resolve disputes finally and quickly.

This court, heeding the Supreme Court's observation, must draw its own line in the sand. For litigation purposes, the facts of this case must at some point become complete. Whether the facts, for other non-litigation purposes, continue to evolve is necessarily of little matter to the court. A decision which has the finality of a legal decision must be based upon a discrete and fixed grouping of facts. This court ordered expert reports on dose to be filed by March 1, 1995. Thus, for purposes of this litigation, the discrete body of factual evidence with respect to the issue of dose became fixed on March 1. Accordingly, attempts to build on this body of facts after the filing deadline passed were misplaced. Consequently, the court granted Defendants' motion in limine with respect to all expert reports filed after the deadline for filing such reports.[54]

Turning now to the application of the <u>Meyers</u> factors to the case before the Court, Plaintiff's primary argument is that a replacement expert is warranted because Plaintiff's counsel was made aware of Mr. Vangura's decision to withdraw just two days prior to this Court's <u>Daubert</u> hearing. Based on this case's record, that explanation is a difficult one for the Court to swallow. First, the only document Plaintiff has ever submitted as Mr. Vangura's expert "report" was his

---

[54] <u>Id.</u> at 828–29.

January 7, 2013 letter. That one-page letter opens as follows: "With regard to the above matter, I have inspected the subject treestand and have the following suggested theories."[55] Mr. Vangura then lists seven possible product liability theories as they relate to the stand. Mr. Vangura writes the following sentence in closing: "Please feel free to contact me at any time with regard to this matter."[56] Those are the entire contents of the letter that Plaintiff has attempted to pass as an expert report under Federal Rule of Civil Procedure 26(a)(2)(B).

The Court does not know the full details of the business relationship that developed between Mr. Rosamilia and Mr. Vangura, but a reasonable practitioner would not be satisfied that the January 7, 2013 letter could ever constitute an expert report in federal court. As a threshold matter, the January 7, 2013 letter does not bear the necessary characteristics of the report. Instead, it appears to be the product of a surface-level investigation into the potential legal theories that Plaintiff might bring based upon the facts of the case. It is a preliminary sketch and appears more like the output of a "consulting" expert rather than one who is bolstering a report to be used to deliver testimony. Whatever transpired over the course of the nearly three years between January 7, 2013 and the days preceding this Court's December 18, 2015 <u>Daubert</u> hearing is known only to Mr. Rosamilia and Mr. Vangura.

---

[55] ECF No. 29 Ex. 3.
[56] <u>Id.</u>

In addition, as Defendant accurately noted in its supporting papers, the January 2013 letter lacks every necessary feature set forth in Federal Rule of Civil Procedure 26(a)(2)(B).[57] With regard to the appropriate sanction for violation of initial disclosure rules, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, <u>unless the failure was substantially justified or is harmless</u>."

For instance, in <u>Bair v. Purcell</u>, then Chief Judge Yvette Kane of this Court allowed an expert to testify despite its party's failing to disclose all of the required 26(a)(2)(B) items because "[d]efendants have known the details of Plaintiffs' experts' qualifications, compensation, publications, and prior testimony for over two years."[58] I would contrast that case with the one presently before the Court, where the disclosed letter does not even include such basic details as the information relied upon by Mr. Vangura or his primary theory. The letter is a scattershot of potential legal conclusions, a product that would emerge from a brainstorming session rather than a practiced methodology. In light of these facts, the Court finds that Plaintiff failed to comply with the deadlines set forth in the Court's August 29, 2014 Scheduling Order, in that Plaintiff failed to submit an

---

[57] <u>See</u> ECF No. 29.
[58] No. CIV.A. 1:04-CV-1357, 2008 WL 250096, at *5 (M.D. Pa. Jan. 29, 2008).

expert by the May 28, 2015 deadline.[59]

Given Plaintiff's "flagrant disregard" both of this Court's August 29, 2014 Scheduling Order as well as Rule 26(a)(2)(B), the Court must turn to the <u>Meyers</u> factors determine whether Defendant would be prejudiced by the late entry of a new expert. In the Court's judgment, Defendant would be so disadvantaged. As an initial matter, it is apparent that Defendant would likely need to depose Plaintiff's new expert, revise its own expert documents, reformulate its own case theory, and even reconsider its already-filed Motion for Summary Judgment. These particular sources of prejudice must be viewed in conjunction with the more general expenses a party incurs due to additional delays and the prolonging of a litigation that has been percolating in federal court for just shy of two years already.

In its papers, Plaintiff contends that Defendant will not be prejudiced by a replacement expert because "[i]t is not the intention of Plaintiff to introduce new theories of liability at this juncture."[60] Unfortunately for Plaintiff, because he has failed to introduce any concrete theories of liability via expert testimony at this point, any theories offered by a replacement expert would necessarily be new theories for the purpose of this case. Because the only expert evidence Plaintiff has proffered is Mr. Vangura's skeletal one-page letter, the replacement expert's substantive opinions would necessarily be akin to reverting the case back to square

---

[59]  ECF No. 21 at 1.
[60]  ECF No. 41 at 6.

one. Plaintiff has waited too long for such a drastic remedy to be applied.

Likewise, in the Court's view, Plaintiff significantly overestimates the ease with

which it will find a quality expert willing to stand in the shoes of Mr. Vangura and

bind him or herself to the four corners of a single page of brainstorming notes.

In response, Plaintiff suggests that any prejudice endured by Defendant is

"self-inflicted" because Defendant unilaterally cancelled the deposition of Mr.

Vangura scheduled for July 6, 2015, at which time Plaintiff contends Mr. Vangura

would have provided several of the required Rule 26(a) disclosures and related

information. According to Plaintiff, Defendant was generally aware of Mr.

Vangura's identity early in the litigation and therefore will not be prejudiced by his

omission. However, the Court agrees with Defendant that this justification is a red

herring. As Defendant sensibly points out: "Contrary to Plaintiff's thought, the

deposition is not when a party learns for the first time the opposition's opinions

and bases."[61]

In addition, Defendant contends that it cancelled the deposition precisely

due to the pending Motion to Preclude. Given the strong case Defendant had for

preclusion at the time of the deposition, it is unsurprising that Defendant would

want to avoid expending costs preparing and taking the deposition of an expert

who would likely never testify. Moreover, given the indistinct relationship between

---

[61] Defendant's Reply Brief at 6.

Mr. Vangura and Plaintiff's counsel, it is not clear that Mr. Vangura would even have appeared at the deposition.

Such incredulity also permeates Plaintiff's explanation that Mr. Vangura's withdrawal is a late-breaking revelation that no one could have possibly anticipated. If the Court chose not to have the <u>Daubert</u> hearing but instead proceeded to dispose of the Motion to Preclude solely on the papers, would Plaintiff have not discovered that his expert had defected until Mr. Vangura failed to show up at trial? When the bulk of an expert's work after at least three years of consultations amounts to a one-page outline that enumerates various legal theories from which Plaintiff's counsel might later pick and choose, the writing is quite plainly on the wall that some aspect of the expert's retention agreement has gone amiss.

The Court would also point out that such a request to forestall the litigation and place it on hiatus until a new expert is found and Defendant can become reoriented flatly contradicts amended Federal Rule of Civil Procedure 1. Rule 1 now mandates that the federal rules be "<u>employed by the court and the parties</u> to secure the just, speedy, and inexpensive determination of every action and proceeding." The Advisory Committee Notes to 2015 Amendments to Rule 1 explain that "just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share

the responsibility to employ the rules in the same way." Thus, according to the Advisory Committee Notes, "[e]ffective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure."

Ultimately, applying the <u>Meyers</u> factors to the particular circumstances of this case, it seems evident that Plaintiff be denied leave to find a replacement expert—to the extent that the arguments in Plaintiff's brief, absent any formal motion, might be liberally construed by this Court as so requesting. Such a decision is mandated by the high level of prejudice Defendant would encounter as a result of the introduction of new substantive evidence so late in the litigation and so far past this Court's clearly demarcated deadlines. Without any expert testimony, Defendant is entitled to judgment as a matter of law.

## IV.   CONCLUSION

Something odd has happened to Plaintiff's expert, and consequently, to Plaintiff's case here. The Court simply does not have enough credible information to determine precisely what has transpired between Plaintiff's counsel Mr. Rosamilia and Plaintiff's supposed expert Mr. Vangura. What is clear, however, is that this litigation is far too advanced for Plaintiff to introduce novel expert evidence now for what would essentially be the first time in the history of this dispute. Lacking this expert evidence, Plaintiff's claims must fail, and Defendant is entitled to an entry of summary judgment in its favor. Thus, to the extent that a

dispute surrounding Plaintiff's non-existent expert still persists, that dispute is now

between Plaintiff, Mr. Rosamilia, and Mr. Vangura but certainty no longer

implicates the Defendant.

An appropriate Order follows.


BY THE COURT:


<u>s/Matthew W. Brann</u>
Matthew W. Brann
United States District Judge